UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL MONTGOMERY, et al.                                                          PLAINTIFFS

v.                                                            CIVIL ACTION NO.  3:15cv795-DPJ-FKB

HOUSBY MACK, INC., et al.                                                           DEFENDANTS

CONSOLIDATED WITH

MICHAEL MONTGOMERY                                                                    PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:16cv23-DPJ-FKB

ULTIMATE TRUCK BODY, INC.                                                            DEFENDANT

ORDER

This products-liability case is before the Court on Defendants' Motion for Summary Judgment [49] and Plaintiff's Motion for Leave to File a Sur-Reply [81].  For the reasons that follow, the Court finds that Plaintiff has not met his burden under Federal Rule of Civil Procedure 56(c) to create a material dispute regarding his originally pleaded claims.  But because he has raised new theories of liability in his summary-judgment response, the Court will allow him to file a motion seeking leave to amend his complaint.  Finally, the motion for leave to file a sur-reply is granted in part and denied in part.

I.     Facts and Procedural History

This case arises from the January 28, 2013 explosion of a pressurized water tank[1] installed on a cement-mixer truck.  Compl. [1] ¶ 9.  The explosion caused Plaintiff Michael Montgomery, a cement-truck driver, devastating injuries to his hand and arm.  *Id.*  On November

---

[1]Plaintiff's expert opines that the correct term is a "pressure vessel."  But the Court will use the term "water tank" to be consistent with the parties' original pleadings.

3, 2015, Montgomery filed this suit against Housby Mack, Inc., Weiler, Inc., Five Star Industries, Inc., and Tri-State Truck Center, Inc. based on their design, manufacture, and/or distribution of the cement truck and water tank in 2006 and 2007. *Id.* ¶ 2–5. He also filed another suit on January 19, 2016, against Ultimate Truck Body, Inc. ("UTB"), the manufacturer of the truck. The Court consolidated the two cases on April 13, 2016. Order [36]. In those pleadings, Montgomery asserts products-liability claims based on design defect, manufacturing defect, failure to warn, breach of express and implied warranties of fitness and merchantability, and negligence. Compl. [1] ¶ 25–26. The more precise role each Defendant played is not relevant to the issues presented.

On June 17, 2016, Defendants Weiler, Five Star Industries, and UTB filed a Motion for Summary Judgment [49], which Housby Mack [58] and Tri-State Truck Center [74] later joined. Defendants argue that the only component part Montgomery identified as being defective in his complaint was a pressure release valve ("PRV") that was materially altered after the products left their hands. Montgomery counters that Defendants have missed the point because his claims have nothing to do with the PRV. He also seeks leave to file a sur-reply. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure Rule 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.     Analysis

     A.     Motion for Leave to File a Sur-Reply

Montgomery seeks leave to file a sur-reply brief in opposition to summary judgment. Specifically, he argues Defendants raised the following contentions for the first time in rebuttal: (1) "Plaintiff only raised a single theory of liability in his Complaint" and (2) "Plaintiff should not be permitted to 'amend' his allegations."  Pl.'s Mot. [81] ¶ 5.  Defendants responded [82], opposing Montgomery's *Unopposed* Motion for Leave to File Sur-Reply Brief [81], and Montgomery failed to reply.

1.      Single Theory of Liability

The Court finds that Defendants made no new arguments in their rebuttal regarding the scope of Montgomery's complaint. Defendants assert in their summary-judgment motion that Montgomery claimed the PRV alone caused the explosion. *See* Defs.' Mot. Summ. J. [50] at 5. Montgomery squarely addressed that contention in both his response to the summary-judgment motion and in his objections to two summary-judgment joinders, contending that he raised more than one theory of liability in his complaint. Pl.'s Mem. [68] at 13–15; Pl.'s Resp. [70] ¶ 3–4; Pl.'s Resp. [77] ¶ 3–4. In fact, Montgomery titled subsection C of his response, "Plaintiff's theories of liability are not *solely* related to the PRV or a change of the PRV." Pl.'s Mem. [68] at 13. Montgomery is not entitled to file a sur-reply as to this issue.

2.      Amendment of Allegations

As for Defendants' contention that Montgomery may not amend his complaint to assert new theories of liability, the argument is not a new basis for dismissing the PRV-related claims but is instead a reply to Montgomery's newly asserted arguments. That said, Montgomery spends little time in his proposed sur-reply actually addressing that argument. In essence, Montgomery challenges Defendants' reliance on *Quicksilver Resources, Inc. v. Eagle Drilling, LLC*. *See* Sur-Reply [81-2] at 7 (analyzing No. H-08-868, 2010 WL 4115397 (S.D. Tex. Oct. 19, 2010)). And he is correct to do so; *Quicksilver Resources* is distinguishable. Because the Court anticipates further briefing on the amendment issue, it sees no harm in allowing this one portion of the sur-reply to stand.[2]

---

[2]The sur-reply is attached to Montgomery's motion, so he need not refile it.

3.     Proposed Sur-Reply

The remainder of the proposed sur-reply is improper. As noted, the proposed sur-reply rehashes arguments regarding the scope of the complaint and spends one paragraph on the "amendment" issue. Otherwise, the eight-page memorandum raises new factual and legal arguments that exceed the scope of the two "new" issues Montgomery sought leave to address. Montgomery plainly seeks the last bite at the apple, but the movant is entitled to the final word. The Uniform Local Rules do not recognize sur-replies. Montgomery's motion is therefore denied other than the one paragraph on page seven addressing *Quicksilver Resources*.

B.     Motion for Summary Judgment

Montgomery asserts design-defect, manufacturing-defect, failure-to-warn, breach-of-warranty, and negligence claims under the Mississippi Products Liability Act ("MPLA"), Mississippi Code section 11-1-63. That statute states:

> (a) The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that *at the time the product left the control* of the manufacturer, designer or seller:
>
>> (i) 1. The product was defective because it deviated in a material way from the manufacturer's or designer's specifications or
>>
>>   2. The product was defective because it failed to contain adequate warnings or instructions, or
>>
>>   3. The product was designed in a defective manner, or
>>
>>   4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
>
>> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code. Ann. § 11-1-63 (West 2016) (emphasis added). And important here, "[t]he plaintiff has the burden of proving that when the accident occurred there had been no substantial change in the condition in which the product left the manufacturer." *Dykes v. Husqvarna Outdoor Prod., N.A., Inc.*, 869 F. Supp. 2d 749, 758 (S.D. Miss. 2012) (citing Miss. Code Ann. § 11-1-63(a) (West 2016) and *BFGoodrich, Inc. v. Taylor*, 509 So. 2d 895 (Miss. 1987)).

Defendants contend that such an alteration occurred in this case. More specifically, they claim that the PRV, a component that would normally regulate pressure within the water tank, was designed by them to release pressure at 55 pounds per square inch ("psi"), whereas the subject PRV was set to release pressure at 150 psi, allowing pressure to exceed safe limits. Defs.' Mot. [50] at 1. Montgomery admits that the PRV was altered. Pl.'s Resp. [67] ¶ 2. But he argues that he "did not allege the PRV or a change of same was a proximate cause of the incident." Pl.'s Mem. [68] at 13; *see also* Pl.'s Resp. [67] at 1; Pl.'s Resp. [70] ¶ 3; Pl.'s Resp. [77] ¶ 3.

Montgomery's position cannot be squared with his complaint. Indeed, the only specific, factual allegation he makes is that "the water tank was equipped with a [PRV] which exceeded the capacity of the water tank . . . *resulting* in a violent and traumatic explosion which injured Plaintiff." Compl. [1] ¶ 13–14 (emphasis added). He also stated that the PRV should not have exceeded 55 psi, but that it was set to 150 psi. *Id.* ¶ 3.

Because Montgomery initially pleaded claims based on an alleged defect in the PRV, the Court must first determine whether those claims survive Defendants' motion for summary judgment. Based on his response, it appears that Montgomery has abandoned those claims.

Indeed he has now offered the expert report of Roger F. Reedy, P.E, who opines that the tank itself was designed in a defective way unrelated to the PRV. Reedy Report [67-4] at 6 (CM/ECF pagination). Reedy goes on to state that "the setting of the pressure relief valve *did not cause* the failure of the pressure vessel," *id.* at 7–8 (emphasis added), because he believes the explosion occurred "at a pressure equal to or less than 55 psig," *id.* at 7. In light of this new position, neither Montgomery's expert nor the other record evidence is sufficient to survive summary judgment on the various PRV-related claims. Montgomery has not created a jury question regarding Defendants' alteration argument, and significantly, his evidence now establishes that any alleged breaches regarding the PRV were not the proximate cause of his injuries.[3] Summary judgment is therefore granted on the claims related to the PRV.

But as noted, Montgomery now contends that the water tank as a whole was defective in other ways. According to Reedy, "[t]he two heads on the ends of the cylindrical pressure vessel were under-designed, resulting in excessively high stresses near the junction of the curved head and the cylindrical shell." *Id.* at 6. And he specifically faulted "[t]he configuration of the head near the junction with the cylindrical shell" as not complying with the ASME Pressure Vessel Code. *Id.* The question is whether these theories of liability are reflected in the complaint.

As Defendants argue, the only theory that is expressly listed in the complaint is the claim that the PRV was defective, "resulting in" the explosion. Compl. [1] ¶ 13–14. But Montgomery

---

[3]Though Montgomery now contends that any defect in the PRV was not a proximate cause of the explosion, he does argue that various warnings and/or other documents regarding the PRV and tank pressures above 55 psi are confusing. *See* Pl.'s Mem. [68] at 15–18. First, none of these theories are supported by factual averments in his complaint apart from those he disavows in paragraphs 13 and 14 related to the PRV. Second, Montgomery has not explained how these theories could co-exist with his new position that the PRV did not cause the explosion because pressure remained at or below 55 psi.

counters that "[e]xcept in specific circumstances which are not applicable here, the Federal Rules of Civil Procedure require notice pleading, not fact specific pleading." Pl.'s Mem. [68] at 13. He then notes various portions of his pleading where he generally alleges causes of action. For example, Montgomery's complaint states,

> The water tank and cement mixer were defective and unreasonably dangerous in design and manufacture because [they] deviated in a material way from Defendants' design and/or manufacture specifications or from otherwise identical units manufactured to the same manufacturing specifications; or were defective because they failed to contain adequate warning or instructions; or the products were designed in a defective manner; or because the products breached an express warranty or failed to conform to other express factual representation upon which the claimant justifiably relied in electing to use the product.

Compl. [1] ¶ 15. He also avers, "As a direct and proximate result of the defective and unreasonably dangerous conditions of the water tank and cement mixer, Defendants are strictly liable for the injuries and damages caused by these defective products . . . ." *Id.* ¶ 21.

To begin with, Montgomery's assertion that these bare legal conclusions satisfy notice pleading is based on authority that predates the United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Those cases now establish that, under applicable pleading standards, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). And significantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

This is precisely what Montgomery offers. When his averments are untethered from the facts regarding the PRV, nothing remains but conclusory statements and threadbare elements.

There is simply no notice to Defendants that some other defect predicates his claims. For example, paragraph 13 of the complaint avers that "the water tank was equipped with" a defective PRV. Compl. [1] ¶ 13. Paragraph 14 then states that, as a result, the explosion occurred. *Id.* ¶ 14. So when Montgomery states in the very next paragraph that "[t]he water tank and cement mixer were defective," *id.* ¶ 15, any reasonable reader would conclude that the water tank was allegedly defective due to the defective component specifically identified in the two preceding paragraphs. And nowhere else in the complaint does Montgomery provide any facts stating a plausible claim related to some other defect, breach of warranty, failure to warn, or negligent act. In sum, none of Reedy's theories are reflected in the Complaint.[4]

That leads to a final problem. The Fifth Circuit has often held, in both reported and unreported opinions, that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). This rule is rooted in the need to provide adequate notice. For example, in *De Franceschi v. BAC Home Loans Servicing, L.P.*, the plaintiff's summary-judgment response raised "new factual allegations and theories of liability not present in the pleadings." 477 F. App'x 200, 204 (5th Cir. 2012). The court first noted that "[a] properly pleaded complaint must give 'fair notice of what the claim is *and the grounds upon which it rests*.'" *Id.* (quoting *Iqbal*, 556 U.S. at 698–99) (emphasis added). It then held that "district courts do not abuse their discretion when they disregard claims or theories of liability

---

[4]The Court would not have expected a motion to dismiss the complaint as drafted because the PRV averments put the legal conclusions in context. There was no way for Defendants to know that Montgomery would eventually back away from those statements.

9

not present in the complaint and raised first in a motion opposing summary judgment." *Id.*; *see also Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 461 (5th Cir. 2014) (holding that harassment claim raised for first time in summary-judgment response was not properly before the district court though complaint generally used terms such as "harassment" and "hostile work environment" because "plaintiff expressly and clearly laid out two causes of action—one for discrimination and one for retaliation").

This rule disallowing new legal claims has also been applied to new factual bases for previously pleaded legal theories.  *See, e.g.*, *De Franceschi*, 977 F. App'x at 204; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory); *Clark v. Gen. Motors*, No. 3:14cv505-DPJ-FKB, 2016 WL 3574408, at *6 (S.D. Miss. June 23, 2016); *Benavides v. EMC Mortg. Corp.*, No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013) (Costa, J.) (refusing to consider new factual theory supporting previously pleaded legal cause of action).  Based on this line of cases, summary judgment might be appropriate.

But there is an equally well-developed body of Fifth Circuit law holding that courts should construe new theories in a summary-judgment response as a motion to amend.  *See Debowale v. US Inc.*, No. 95-20031, 1995 WL 450199, at *1 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it").  "This [rule] is particularly true where . . . the litigant is *pro se* and has not yet made any amendments to her complaint."  *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010).  But it has also been applied to represented

10

parties. *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972).

Assuming for now that the response should be converted to a motion to amend, it would create procedural problems to actually consider the "motion" at this juncture. First, Montgomery never actually sought leave to amend, and the deadline to do so has now passed. Second, under Uniform Local Rule 7(b)(3)(C), a motion cannot be asserted in the body of a response. *See Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 753, 753 n.10 (N.D. Miss. 2015) (construing new claims as a motion for leave to amend but denying leave in part because local rule requires a separately filed motion) (citing L.U. Civ. R. 7(b)(3)). Finally, and most significantly in the mind of the Court, none of the parties anticipated that the response might be converted to a motion to amend. Neither side has addressed the appropriate issues, and the Court lacks sufficient information to know whether an amendment should be allowed.

As such, the Court concludes that a different approach is appropriate in this case. Montgomery will be given fourteen (14) days from the date of this Order to file a motion seeking leave to amend his complaint. Because his summary-judgment response came after the deadline to amend, he will need to argue his case under Federal Rule of Civil Procedure 16(b). *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) ("Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired."). And pursuant to Uniform Local Rule 7(b)(2), "[a] proposed amended pleading must be an exhibit to a motion for leave to file such pleading."

Finally, Montgomery should pay particular attention in his proposed amended complaint to the basis for the various causes of action he initially asserted. Leave to amend can be denied

if the amendment would be futile.  *See Bombardier Aerospace Corp. v. United States*, 831 F.3d 268, 284 (5th Cir. 2016).  Here, Reedy's report suggests a design defect, and Montgomery will need to plead sufficient facts to show a plausible claim regarding the other causes of action as they relate to this new theory.  *See Twombly*, 550 U.S. at 570.  For example, simply averring that "[t]he water tank and cement mixer were defective and unreasonably dangerous in . . . manufacture because [they] deviated in a material way from Defendants' design and/or manufacture specifications or from otherwise identical units manufactured to the same manufacturing specifications," is not sufficient absent some facts suggesting how the products deviated and from what.  Compl. [1] ¶ 15.

IV.  Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment [49] as to the PRV-related claims.  Plaintiff's Motion for Leave to File a Sur-Reply [81] is granted to the extent the *Quicksilver Resources* discussion will be allowed but is otherwise denied.  Finally, Plaintiff will be given fourteen (14) days from the date of this Order to file a properly supported motion seeking leave to amend under Federal Rule of Civil Procedure 16(b).  Failure to do so will result in the dismissal of this action without further notice.  If Montgomery so moves, Defendants will have an opportunity to file a response, to which Montgomery may reply.  The subsequent memoranda must be filed within the time limits found in Uniform Local Rule 7(b)(4).

**SO ORDERED AND ADJUDGED** this the 28th day of October, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE